UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Telemarketing Specialists, Inc.,

        Plaintiff,

        v.                          Case No. 1:04cv235

Timothy P. Heidel,                  Judge Michael H. Watson

        Defendant.

_____

**MEMORANDUM OPINION AND ORDER**

_____

       This matter is before the Court upon Defendant Timothy P. Heidel's Motion for Summary Judgment. (Doc. 40) Plaintiff American Telemarketing Specialists, Inc. ("ATS") has filed a Response in Opposition (Doc. 45), and Heidel has filed a Reply. (Doc. 51) This matter is now ripe for review.

## I. FACTUAL BACKGROUND

       Defendant Heidel is an Ohio resident who responded to an Internet job posting listed by Plaintiff ATS. (Doc. 44, Timothy Heidel Depo., Ex. A) ATS is a Dallas, Texas-based telemarketing firm. (Doc. 43, Randal Keylor Depo. at 8) On January 22, 2003 Heidel faxed his resume to ATS's owner, Randy Keylor. (Heidel Depo., Ex. A) Keylor and Heidel had a telephone conversation regarding possible employment. (Keylor Depo. at 31) Shortly thereafter, the two men met in Dallas for a face-to-face meeting. (Id. at 33-34) Keylor recalls Heidel telling him that he was currently employed with another telemarketing company, Meridian. (Id. at 34) Keylor also maintains that Heidel told him that the owner of Meridian wanted to sell the company and that Heidel had Meridian's blessing to take

several customer accounts with him.  (Id. at 34-35)  Keylor recalls Heidel mentioning the

customers by name.  (Id. at 35)  Keylor states that Heidel told him that it would take six

weeks for the accounts to be moved.  (Id.)

> As a follow-up to the meeting, Heidel sent Keylor an email on February 10, 2003:
>
> > As we discussed on Friday, we are planning to finalize out Agreement as soon as possible.  To give you an idea of the immediate opportunities I have ready to bring on board, I thought I would give you an update on the inbound contracts I have that will be ready to get started.  These include a bank based in Atlanta, a cable company (sound familiar?), a utility company, a flooring-covering company, a "pet containment" company ("The Invisible Fence"), a Blue Cross-Blue Shield organization and a specialty catalogue (Orvis).  As you can see, they are quite diversified and fit the strategy we had discussed.  Please call me when you have our Agreement finalized and we can discuss how we will "close" these opportunities.

(Id. at 41; Ex. B)  Keylor hired Heidel because Heidel told him that he would bring these

accounts over to ATS.  (Id. at 73)

A few days later, Heidel and Keylor, on behalf of ATS, signed an employment

agreement ("the Agreement").  (Id., Ex. D)  The Agreement included an exclusivity

provision:

> Employee agrees to devote all of his time, attention and energy to the performance of Employee's duties pursuant to this agreement, and shall perform such duties to the best of Employee's ability.

(Id.)  The Agreement also provided for an advance commission to be paid to Heidel:

> To ease your transition to American Telemarketing Specialists, Inc., you will receive $60,000 in one gross payment via Federal Express delivery within five (5) days of receipt of an executed copy of this agreement or a facsimile thereof.  This amount of $60,000 will be applied toward commissions as detailed in this Agreement.
>  . . .
> Should you voluntarily leave the employ of American Telemarketing Specialists, Inc., prior to the recovery of this amount, you agree to return to

the Company the unearned portion of this $60,000 one time payment within
two (2) weeks of leaving the Company's employ.

(Id.)

Keylor states that after being hired, Heidel did not bring in any business.  (Keylor
Depo. at 57)  After Heidel had been employed for six weeks, Keylor became suspicious
regarding the accounts from Meridian.  (Id. at 44)  Keylor directed his assistant to call
Meridian. (Id. at 45) Keylor learned that Heidel had not worked for Meridian since January
of 2000.  (Id. at 46)  Keylor confronted Heidel with the information, and Heidel explained
that he was an independent contractor for Meridian.  (Id. at 48)  Keylor again contacted
Meridian to confirm this information, but was told that the information was not correct.  (Id.)
Keylor then emailed Heidel on April 28, 2003, and demanded the return of the $60,000
advance commission.  (Id., Ex. U)  In a letter dated April 29, 2003, Keylor terminated
Heidel's employment.  (Id., Ex. Z)

Heidel maintains that he continued to work with Meridian as an independent
contractor until 2003.  (Heidel Depo. at 28)  Heidel denies misrepresenting his work history.
(Id., Ex. W)

ATS later learned that Heidel was employed with another company, Advance
Telephone Promotions, while employed by ATS.  (Doc. 48, James Agnello Aff.)

ATS originally filed its complaint in state court in Texas.  It was then removed to the
United States District Court for the Eastern District of Texas, before being transferred to
this Court pursuant to 28 U.S.C. §1404(a).  (Doc. 20)  In its Amended Complaint, ATS

brings claims of common law fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, and conversion. (Doc. 10)[1]

## II. ARGUMENTS OF THE PARTIES

Heidel states that pursuant to a choice of law provision in the Agreement, Texas law is applicable to disputes under the contract, but Ohio law applies to ATS's claims for fraud, fraudulent inducement, breach of fiduciary duty, and conversion.

Heidel argues that there is no evidence to support ATS's claim for fraud or fraudulent inducement because Heidel's employment with Meridian was a minor subject during the pre-employment discussions between the parties. Heidel also argues that there is no evidence that Heidel promised that he would bring any customers with him. Heidel states that assuming *arguendo* that Heidel did misrepresent his length of employment with Meridian, there is no evidence that his length of employment with Meridian induced ATS to employ Heidel. Moreover, Heidel argues that these pre-employment discussions are excluded from the Court's consideration by the parol evidence rule. Heidel also argues that Keylor has conceded that there is no clause in the Agreement which would give ATS the right to recover the advance commission. Likewise, Heidel argues that Keylor has conceded that Heidel was not an officer or director of ATS, and therefore there is no basis for ATS's breach of fiduciary duty claim. Finally, Heidel argues that ATS's claim for conversion must also fail because the advance commission was paid pursuant to an agreement between the parties.

---

[1]Heidel has filed a counterclaim for common law fraud, fraudulent inducement, breach of contract, and declaratory judgment. (Doc. 1, Ex. C) These claims are not before the Court.

ATS responds that this is a case of resume fraud. ATS argues that Heidel falsely represented that he was currently employed by Meridian and that a specific group of accounts would follow him to ATS. ATS states that these material misrepresentations were the basis upon which ATS hired Heidel and made the advance commission payment. ATS also argues that Heidel was working for another employer while he was employed by ATS, which is a violation of the exclusivity provision in the Agreement. ATS states that this course of conduct falls within the definition of fraud adopted by the Sixth Circuit.

## III.    ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

**B.      Applicable law.**

In general, a federal court adjudicating a diversity action must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Miller v. State Farm Mutual Automobile Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). However, where a case is transferred under 28 U.S.C. §1404(a), the transferee court must follow the choice-of-law rules of the transferor court. *Northland Insurance Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 616 (6th Cir. 1998).

Here, the Agreement between the parties contains a choice of law provision: "This Agreement shall be governed by and construed in accordance with the laws of the state of Texas." (Keylor Depo., Ex. D)  In Texas, contractual choice-of-law provisions are typically enforced. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004).  Under Texas law, a narrow choice of law provision, such as this one, would clearly apply to the interpretation and enforcement of the contractual agreement. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003).  However, it would not necessarily encompass all disputes between the parties or to encompass tort claims. *Id.*  Yet, this case was transferred to this Court from the Eastern District of Texas.  When a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is obligated to apply the law of the state in which the transferor court sits, regardless of who initiated the transfer. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).  Therefore, this Court will apply Texas law to all of ATS's claims.

**C.      Common law fraud and fraudulent inducement.**

Under Texas law, a fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its

truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001). Therefore, the elements of fraud must be established as they relate to an agreement between the parties. *Id.*

ATS states that it relied upon the following material misrepresentations when it hired Heidel and paid him the advance commission: (1) he was currently employed as Vice President of Sales at Meridian; (2) he generated $8 million in new sales at Meridian; (3) Meridian was being sold because the owner was elderly; and (4) a specific group of accounts would follow Heidel to ATS. To prove these statements are false, ATS relies upon an affidavit from William Hartman, Human Resources Director at Meridian Enterprises. (Doc. 46, William Hartman Aff.) Hartman clearly states that Heidel's employment with Meridian ended in 1999; he had no continuing relationship with Meridian thereafter as an independent contractor or otherwise; Heidel was never a vice president of sales; while he was employed with Meridian, Heidel did not sell any business for the company, let alone $8 million in new sales; the owners of Meridian never considered selling the business; and while at Meridian, Heidel did not provide services to a bank based in Atlanta, a cable company, a utility company, a floor-covering company, the Invisible Fence Company, Blue Cross-Blue Shield, or a specialty catalog company. (Id.)

Breach of a contract itself is not fraud. As the Supreme Court of Texas has explained:

> A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.  However, the mere failure to perform a contract is not evidence of fraud.  Rather, [plaintiff] had to present evidence that [defendant] made representations with the intent to deceive and with no intention of performing as represented.

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).  However, as Heidel himself recognizes, the representations made by Heidel regarding the Meridian accounts and his employment status, job title, and amount of sales with Meridian were not a subject of the contract between the parties.  Instead, there is evidence in the record that Heidel used these representations to induce ATS to hire him and make an advance payment commission.  In the face of the unequivocal statements in Hartman's affidavit, the Court can only assume that Heidel knew these statements were false, and he intended for ATS to act upon them.

Heidel argues that his employment with Meridian was a minor subject during the pre-employment discussions and that there is no evidence that Heidel promised that he would bring any customers with him.  Heidel's argument that his employment with Meridian was a minor subject is to no avail because Kelor specifically testified that it was Heidel's statement that he would bring Meridian's accounts with him which induced him to hire Heidel.  Furthermore, Heidel's email of February 10, 2003 belies Heidel's argument that he made no promises of bringing customers with him.  Heidel clearly states that the customers described above are "inbound contracts I have that will be ready to get started." Heidel argues further that there is no evidence that his length of employment with Meridian induced ATS to employ Heidel.  Certainly, from the context of the discussions between the parties, it was material whether Heidel was a current employee of Meridian, or had not

been employed by the company for over four years.  Finally, Heidel appears to fault ATS for failing to perform a background check on him, and instead only relying upon a handwriting analysis.  Heidel does not cite to any caselaw which requires the onus to be placed on the employer to prevent fraud or fraudulent inducement when entering into an employment agreement.

The Court finds that there are genuine issues of material fact regarding ATS's claims for fraud and fraudulent inducement, and that Heidel is not entitled to summary judgment on these claims.

      **D.**    **Breach of contract.**

Under Texas law, the essential elements in a breach of contract claim are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.  *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F.Supp.2d 848, 855 (E.D.Tex. 2004) (citations omitted).

ATS argues that Heidel's employment with Advanced Telephone Promotions at the same time he was employed with ATS is a breach of the exclusivity provision in the Agreement.  However, in the Amended Complaint, ATS makes no allegations to this effect. Instead, ATS's breach of contract claim is premised upon (1) Heidel's representations regarding his employment with Meridian and the accounts from Meridian; and (2) his failure to perform his job duties.

The allegations regarding Heidel's representations form the basis for ATS's fraud and fraudulent inducement claims.   While the allegations may support a claim for

rescission of the contract, ATS has not plead such a claim.[2]  Yet, ATS has presented evidence that Heidel failed to perform his job duties.  Under the Agreement, Heidel was to establish and implement a marketing plan, and negotiate and obtain profitable outsizing contracts for ATS.  (Keylor Depo., Ex. D)  While Heidel disputes why he was unable to obtain contracts, he does not dispute that no contracts were obtained for ATS.  Because there are genuine issues of material fact regarding Heidel's performance, Heidel is not entitled to summary judgment on this claim.

### E.    Breach of fiduciary duty.

To recover for breach of fiduciary duty under Texas law, the plaintiff must establish the defendant was the plaintiff's fiduciary.  *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.-Houston 1993, writ denied).   A fiduciary relationship is an extraordinary one that the law does not recognize lightly.  *Id.*   However, Texas law recognizes not only formal fiduciary relationships, but also informal, common-law "fiduciary" relationships.  *See Crim Truck & Tractor Co. v. Navistar*, 823 S.W.2d 591, 594 (Tex. 1992) ("We have also recognized that certain informal relationships may give rise to a fiduciary duty").[3]  Under Texas law, there are two kinds of informal, common-law "fiduciary" duties.  One is referred to as a "special relationship," and the other is referred to as a "confidential relationship."

---

[2]Instead, ATS's claim is for money damages.  *See Humphrey v. Camelot Retirement Community*,  893 S.W.2d 55, 59 (Tex.App.-Corpus Christi,1994) (explaining that rescission is an equitable remedy that operates to set aside a contract that is legally valid but is marred by fraud, mistake, or for some other reason, the court must set it aside to avoid unjust enrichment), *citing*, *Lowrey v. University of Texas Medical Branch*, 837 S.W.2d 171, 174 (Tex.App.--El Paso 1992, writ denied).

[3]This case has been superceded by statute where there is a car dealership franchise agreement.  *See Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002).  However, it is still applicable to this case.

*Id.*  However, "mere subjective trust does not, as a matter of law, transform arms-length dealing into a fiduciary relationship."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).  "The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship."  *Crim*, 823 S.W.2d at 594.  Although the existence of a confidential relationship is ordinarily a question of fact, where there is no evidence to establish the relationship, it is a question of law.  *Seymour v. Am. Engine & Grinding Co.*, 956 S.W.2d 49, 60 (Tex.App.-Houston 1996, writ denied).  Here, there is no evidence that the relationship between Keylor or ATS and Heidel was anything more than an arm's length dealing, or that of an employer and employee.  Therefore, there is no evidence of a fiduciary relationship, and Heidel is entitled to summary judgment on this claim.

   **F.    Conversion.**

   Under Texas law, conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights.  *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).  ATS alleges that Heidel's refused to return money payments to which Heidel was not entitled.  An action for conversion of money will lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.  *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex.App.--Dallas 1992, writ denied); *see also Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.App.--Houston 1981, writ ref'd n.r.e.) (recognizing that an action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise

particularly treat the specific money).  There is no evidence that the payments made to Heidel were intended to be kept segregated or to be treated as "specific money."  Instead, the payments were for advance commissions or salary.  Therefore, Heidel is entitled to summary judgment on this claim.

Based on the foregoing:

1.     Defendant Timothy P. Heidel's Motion for Summary Judgment (Doc. 40) is **DENIED** as to Plaintiff ATS's claims of common law fraud, fraudulent inducement, and breach of contract; and

2.     Defendant Timothy P. Heidel's Motion for Summary Judgment (Doc. 40) is **GRANTED** as to Plaintiff ATS's claims of breach of fiduciary duty and conversion.

**SO ORDERED.**

_____/s/ Michael H. Watson_____
Michael H. Watson, Judge
United States District Court